# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE L. PHILLIPS,<br><br>Petitioner,<br><br>vs.<br><br>M.D. BITER and K. HARRIS,<br><br>Respondents. | CASE NO. 12-CV-2110 GPC (NLS)<br><br>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITIONER'S WRIT OF HABEAS CORPUS**<br><br>[Dkt Nos. 1, 10.] |

## INTRODUCTION

Petitioner Lawrence L. Phillips ("Petitioner"), a state prisoner proceeding *pro se*, filed the present Petition for Writ of Habeas Corpus seeking 28 U.S.C. § 2254 habeas relief on the ground that the trial court improperly denied Petitioner's first three motions filed pursuant to People v. Marsden, 2 Cal. 3d 118 (1970), for substitution of counsel during Petitioner's state court trial. (Dkt. No. 1.) On February 5, 2013, United States Magistrate Judge Nita Stormes issued a Report and Recommendation ("R&R") recommending that this Court **DENY** the Petition. (Dkt. No. 10.) On April 24, 2013, Petitioner filed objections ("Objections") to the R&R. (Dkt. No. 16.)

For the reasons set forth below, this Court **OVERRULES** Petitioner's Objections, **ADOPTS** Judge Stormes's R&R in its entirety, and **DENIES** Petitioner's petition for writ of Habeas Corpus.

## STANDARD OF REVIEW

The district court's role in reviewing a Magistrate Judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. When no objections are filed, a district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974); Johnson v. Nelson, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

## BACKGROUND

The R&R clearly lays out the underlying factual and procedural history. While Petitioner's filed Objections are couched as factual objections, they either confirm the R&R's factual findings or present differing legal conclusions drawn from the facts rather than objecting to the facts themselves. This Court, therefore, presumes the R&R's recitation of the facts to be correct and incorporates by reference the background as set forth in the R&R. See Campbell, 501 F.2d at 206. The Court provides only a brief background here.

Petitioner filed four Marsden motions during his state court criminal proceedings seeking substitution of counsel. The instant petition concerns the first three Marsden motions filed by Petitioner seeking substitution of Petitioner's trial counsel ("Counsel"). The first Marsden motion ("Marsden I") was made on August 3, 2009, the date Petitioner's trial was set to begin. (Lodgment 5, Vol. 3 at 31.) Petitioner informed the trial court that: (1) Petitioner's Counsel was away from his office for a month, (id. at 32); (2) Counsel was disrespectful to Petitioner's mother, (id. at 36-37); and (3) Counsel decided not to cross-examine witnesses, (id. at 33-35). Petitioner's Counsel clarified that he was away from his office on a one-week vacation and a three-week trial training program, and had met with Petitioner twice to discuss the case in the week

prior to his trip. (Id. at 37-38.) Counsel designated his supervisor to handle his cases while he was away. (Id.) Petitioner's counsel acknowledged hanging up the telephone on Petitioner's mother, but explained that she was verbally abusive to him and that they had since come to a "mutual respect." (Id. at 39-40.) Counsel described the difficulty of locating witnesses and confirmed that he and Petitioner had fundamental disagreements on trial strategy. (Id. at 39-40.) Counsel stated that he did not have a very good working relationship with Petitioner, but he was nevertheless prepared to vigorously represent him. (Id. at 40-42.) The trial court observed that Petitioner and Counsel were communicating despite the disagreements, and advised Petitioner that Counsel held responsibility for tactical legal decisions. (Id. at 41, 44-45.) The trial court concluded that Counsel's representation was effective and that the attorney-client relationship had not deteriorated to the point where deficient or incompetent representation would be provided. (Id. at 45-47.) Furthermore, the trial court found that Petitioner could not justify the untimeliness of the motion. (Id. at 46-47.) Accordingly, the trial court denied the motion. (Id. at 47.)

The second Marsden motion ("Marsden II") was made on August 4, 2009, the following day. (Id. at 90.) Petitioner stated that he and Counsel could not communicate because of their discrepant views and unwillingness to compromise. (Id. at 93.) The trial court noted that Petitioner and Counsel must have been communicating if they were disagreeing. (Id. at 95.) Counsel stated that he felt physically threatened by Petitioner. (Id. at 90-91.) Petitioner assured the court, upon its request, that he would not attack Counsel; Counsel confirmed that he would continue to effectively represent Petitioner. (Id. at 96-98.) The trial court then denied the motion. (Id. at 98.)

The third Marsden motion ("Marsden III") was made on the following day, August 5, 2009. (Id. at 101.) Counsel advised the trial court that he was developing physical symptoms of stress. (Id. at 102.) When asked whether he could proceed representing Petitioner if sufficient security measures were in place, Counsel indicated that he could feel safe in the courtroom but was concerned that he and Petitioner lacked

mutual trust and communication. (Id. at 103, 105, 112.) The trial court found the motion untimely and that granting the motion would significantly burden the prosecution. (Id. at 118.) The trial court also found Petitioner largely responsible for the conflict because of his refusal to cooperate with Counsel, which was not grounds for substitution of counsel under People v. Marsden. (Id. at 106.) The trial court denied the motion. (Id. at 123.)

Petitioner was convicted on August 11, 2009 of two counts of assault, two counts of corporal injury, one count of false imprisonment, one count of making a criminal threat, and one count of unlawful taking and driving of a vehicle. (Lodgment 1 at 169, 171,172, 174, 176-78, 358-59.) Petitioner was sentenced to twenty-four years and four months. (Lodgment 1 at 358-59.) Petitioner's state law remedies were exhausted when the California Court of Appeal denied his appeal and the California Supreme Court denied his Petition for Review. (Lodgment 9; Lodgment 11.)

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Petition. See Lindh v. Murphy, 521 U.S. 320, 336-37 (1997). Under AEDPA, a federal court will not grant habeas relief with respect to any claim adjudicated on the merits in state court unless the decision was (1) based on an unreasonable determination of the facts in light of the evidence presented or (2) contrary to or involved an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d); Early v. Packer, 537 U.S. 3, 7-8 (2002). The state court decision must be more than incorrect or erroneous to warrant habeas relief. Lockyer v. Andrade, 538 U.S. 63, 71-73 (2003). The standard under AEDPA is not met unless the state court's application of the law is "objectively unreasonable." Id. For the following reasons, the Court agrees with the R&R that Petitioner has failed to demonstrate that either the factual findings or the legal determinations of the state court were objectively unreasonable.

//

## I. Factual Determinations and Objections

The first ground for habeas relief requires a showing that a state court's determination of the facts in light of the evidence presented was unreasonable. "A determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. While Petitioner's Objections assert that the trial court's factual findings were "false," he did not point to any specific part of the record that contradicts the court's findings. Rather, Petitioner used the Objections as an opportunity to restate the arguments already considered and rejected by the trial court in the Marsden hearings at issue. This Court does not directly review the Marsden motions, but only focuses on whether the trial court abused its discretion in deciding the motions. The trial court's factual determinations must be presumed to be true because Petitioner failed to rebut the presumption with sufficient evidence. See 28 U.S.C. § 2254(e)(1).

In addition, in filing Objections to a Magistrate Judge's report and recommendation, Petitioner has the burden of citing specific instances of error in the R&R to alert the Court of the true grounds for the objections. Bridgeman v. Stainer, 12-CV-212 BEN PCL, 2014 WL 1806919 (S.D. Cal. May 7, 2014). To conclude otherwise would defeat the purpose of requiring objections and undermine the district court's effectiveness based on help from magistrate judges. Id. (quoting States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007)). Here, the R&R contains all the material facts stated in the Objections, with direct quotations from the record. Petitioner's Objections fail to challenge any particular portion of the R&R. In fact, Petitioner's Objections are largely consistent with the R&R. Accordingly, the Court agrees with the Magistrate Judge that the trial court's decision was not based on an unreasonable determination of the facts.

## II. Clearly Established Federal Law

Because the trial court's factual determinations were not unreasonable, the only

remaining question under AEDPA is whether the trial court misapplied "clearly established federal law" in a manner that was objectively unreasonable. 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71. The Sixth Amendment guarantees an indigent defendant the right to counsel and to conflict-free representation. See Gideon v. Wainwright, 372 U.S. 335, 344-45 (1963); Garcia v. Bunnell, 33 F. 2d 1193, 1195 (9th Cir. 1994). However, Petitioner is not constitutionally guaranteed a "meaningful relationship" with his counsel as long as he receives adequate representation. Morris v. Slappy, 461 U.S. 1, 2 (1983); Plumlee v. Masto, 512 F.3d 1205 (9th Cir. 2008). In evaluating the trial court's denial of Petitioner's Marsden motions, the Court considers a number of factors as set forth in United States v. Mills 597 F.2d 693, 700 (9th Cir. 1979): (1) the extent of the conflict; (2) the timeliness of the motion; and (3) the adequacy of the court's inquiry. (the "Mills factors") See also Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982). In applying the three Mills factors, the Court considers only whether the state court abused its discretion in such a way that violated Petitioner's constitutional rights. Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000). The Magistrate Judge correctly found that all three factors weighed against Petitioner in the present case.

### A. The Extent of the Conflict

The first Mills factor concerns whether the conflict between Petitioner and Counsel was so great that it resulted in "a total lack of communication preventing an adequate defense." Mills, 597 F. 2d at 700. "Conflict" in the present context means actual and legal conflict not of the defendant's own making. See Plumlee, 512 F.3d at 1210; Schell, 218 F. 3d at 1026. A defendant cannot establish a claim of ineffective assistance until he shows that his counsel actively represented conflicting interests. Schell, 218 F. 3d at 1026 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). Subjective distrust or dislike does not create a "conflict" that satisfies the first Mills factor. Id.

Legal conflict of interests involves an incompatibility between the interest of two

of a lawyer's clients, or between the lawyer's own private interest and those of the client. <u>Plumlee</u>, 512 F.3d at 1210; <u>e.g.</u>, <u>Mickens v. Taylor</u>, 535 U.S. 162, 164 (2002) (recognizing potential conflict where appointed counsel previously represented the victim in a separate case). Here, Petitioner did not allege and the record does not show that Counsel represented any conflicting interest. Petitioner's claim of conflict heavily relies on the fact that he and Counsel had different views regarding trial strategy.

As the trial court correctly pointed out, disagreement over tactics do not constitute a conflict that would result in incompetent representation. <u>Schell</u>, 218 F.3d at 1026. The court also properly advised Petitioner that tactical decisions were within the discretion of Counsel. <u>Id.</u> The right to counsel is not an all-or-nothing right that gives a defendant control to every aspect of his case beyond the basic structure. <u>Jones v. Barnes</u>, 463 U.S. 745, 759 (1983). A counsel may properly make a tactical determination of how to run a trial "even in the face of his client's incomprehension or even explicit disapproval." <u>Schell</u>, 218 F.3d at 1026. Absent exceptional circumstances, a defendant is bound by the tactics used by his counsel at trial and on appeal. <u>Henry v. State of Mississippi</u>, 379 U.S. 443, 451 (1965). Here, the record reflects that Petitioner's trial counsel explained to the court that he believed cross-examining the witnesses in this case would be inefficient and counterproductive. The choice of strategy was based on Counsel's professional judgment rather than any personal animosity or conflicting interests. (Lodgment 5 at 39-40.) The Court therefore agrees with the trial court that Petitioner received adequate representation.

In addition, the Court notes that Habeas relief is generally granted when a defendant's federal rights have been violated, not when a defendant knowingly and intentionally interfered with judicial proceedings. <u>See</u> <u>Schell</u>, 218 F.3d at 1026; <u>See</u>, <u>e.g.</u>, <u>Hudson</u>, 686 F.2d at 832 (weighing "voluntary conduct of defendant" in sabotaging attorney-client relationship against defendant). Here, the contention in the attorney-client relationship stemmed from tactical disagreement and was escalated by Petitioner's voluntary actions. In particular, the record reflects that Petitioner refused

to cooperate with and intimidated his trial counsel. The trial court was therefore not unreasonable in concluding that the nature and the extent of the contention did not warrant substitution of counsel.

### B. Timeliness of the Motions

The Court next considers the timeliness of Petitioner's three Marsden motions. Mills, 597 F.2d at 700. Marsden motions must be timely made because society has a strong "interest in prompt and efficient administration of justice." Hudson, 686 F.2d at 831. A defendant's constitutional right to counsel must be balanced against the interest of judicial expeditiousness. Id. Moreover, granting Marsden motions may necessitate continuances and burden opposing counsel with the problems of reassembling witnesses, lawyers, and jurors at the same place at the same time. Morris, 461 U.S. 1, 11 (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)). Consequently, trial courts have broad discretion to deny untimely Marsden motions unless the reasons for delay are compelling and justified. Id.; Jackson v. Ylst, 921 F.2d 882, 887-88 (9th Cir. 1990). Not every restriction on counsel's time or opportunity to consult with his client violates a defendant's Sixth Amendment right. Morris, 461 U.S. 1, 11. The question is whether the court's insistence on expeditiousness is unreasonable and arbitrary. Id.

Here, the trial court weighed Petitioner's claims against the burden a continuance would have on the prosecution. Unlike Morris, where the defendant sought a continuance to obtain the services of his prior counsel, Petitioner has no such previous association to weigh in his favor. The fact that Counsel was away from his office for one month may have made the attorney-client communications less convenient or less frequent. However, Petitioner appeared in court with Counsel two months before trial and discussed the case with Counsel weeks before the trial on multiple occasions. (Lodgment 5 at 37-38.) Furthermore, Petitioner never indicated any dissatisfaction until the day of trial. (Id. at 47.) Balancing the competing interests at stake, the trial court held that the untimeliness of the Marsden motions weighed against Petitioner. The trial

court did not unreasonably or arbitrarily sacrifice justice for speed. Rather, the court denied Petitioner's motions in consideration of fairness and justice.

### C. Adequacy of the Inquiry

The final Mills factor considers the adequacy of the trial court's inquiry. Mills, 597 F.2d at 700. The Sixth Amendment requires only "an appropriate inquiry into the grounds for such a motion." Schell, 218 F. 3d at 1025. Following each of Petitioner's three Marsden motions, the trial court held a hearing to review Petitioner's claim and to seek Counsel's response. The record shows that the trial judge was thorough and sensitive in his inquiries. The R&R notes that the trial court urged Petitioner to be specific in his claims, examined the communication between Petitioner and Counsel, and discussed Counsel's effectiveness in investigation and trial strategies. Petitioner raised no objections to the adequacy of the trial court's inquiry either in his Habeas Petition or his Objections to the R&R. The Court agrees with the Magistrate Judge that the trial court's level of review for each motion was appropriate and adequate.

## II. Certificate of Appealability

When a district court enters a final order adverse to the applicant in a habeas proceeding, it must either issue or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2254 Cases. A certificate of appealability is required to appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c) (1)(A). A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." Miller–El v. Cockrell, 537 U.S. 322, 336 (2003). Under this standard, the petitioner must demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. 28 U.S.C. § 2253; Slack v. McDaniel, 529 U.S. 473, 474 (2000). Here, the Court finds that Petitioner has not demonstrated that the reasonable jurists could debate whether the petition should have been resolved differently, and it therefore DENIES a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Petitioner failed to show that the trial court based its decision to deny Petitioner's Marsden motions on either an unreasonable determination of facts or unreasonable application of clearly established federal laws. See 28 U.S.C. § 2254(d). **IT IS HEREBY ORDERED** that:

1. Petitioner's Petition for Writ of Habeas Corpus is **DENIED**;
2. Judge Stormes's Report and Recommendation as to the Petition is **ADOPTED** in its entirety ; and
3. Petitioner's Objections to the Report and Recommendation are **OVERRULED.**
4. Petitioner is **DENIED** a certificate of appealability.

**IT IS SO ORDERED.**

DATED: July 22, 2014

HON. GONZALO P. CURIEL
United States District Judge